Your Honors, my name is Rob Radcliffe. I'm appearing on behalf of the appellant Generac Power Systems, Inc. OTE manufactured a product that admittedly was defective because it used a carbon resistor. It now attempts to bridle Generac with an expired quotation and terms and conditions in that expired quotation that include a limited warranty provision. This court is asked to determine what the agreement was between the parties. Generac contends the agreement is the February 1, 2008 purchase order followed by the February 8, 2008 sales confirmation from OTE. OTE contends the agreement is the January 21 email coupled with the expired quotations with the accompanying terms and conditions for the wrong product. Both the law and the facts support Generac's position. There are two issues I would like to address with the court today. First, the agreement between the parties was the purchase order and the sales order confirmation, a back-and-forth communication which took place on no less than 29 occasions between these parties. And two, alternatively, if this court rules the offer is the expired quotation for the wrong product along with the email, it should adopt the majority position of U.S. courts, use the knockout rule, and apply UCC supplementary terms to establish what the agreement was. Well, on that last point, we should look, shouldn't we, to what the Texas authorities are to see whether we have any clues there. In other words, we're not just free to roam around the country and figure out either what's the majority view or what's the best view of the law. That is correct, Your Honor. This court is asked to make a so-called eerie guess as to what Texas will do based upon the law that is out there. The contract, turning to the first issue, the contract between Generac and OTE was the February 1st, 2008 purchase order and its terms and conditions followed by OTE's February 8th, 2008 confirmation, which was signed by OTE. The purchase order is an offer and contains all material terms. The purchase order has the correct product, which is a 13.4 volt and 2.5 amp battery charger. It has correct pricing. Why don't you start with January 21? When the seller sends it to the buyer, the email says, here's a quotation that was originally sent in November, back in November. Item 1, the one that's highlighted, is the item you should be looking at. The description is no longer correct. It is now 2.5 amp, but the pricing remains the same. Once the drawing specs have been released, I can send an updated. That contained the express warranty and express limitation of terms. Then on February 1, the buyer sends the seller a purchase order requesting 20,000 units, 20,000 at 1523 and so forth. Then in that particular one, the purchase order contained the express warranty terms. Then on February 1, the seller sends back the buyer a sales order confirmation indicating quantity and price as stated in the February purchase order, and the seller ships the buyer 20,000 units. Why isn't that right straight down the middle of a code? Your Honor, because in this particular instance, we were looking at a quotation, and if the court looks at its precedents, what has been stated previously in the J.D. Fields case and in the Cressridge case is that a complete quotation, it has to be capable to just say, I agree. There has to be a sent. That's not what took place here. The problem when you use a quotation is you don't have all of your terms in the particular quotation. So here in this quotation, we don't have the right product, and we don't have any shipping terms, and we don't have a quantity term. We just have a suggestion as to pricing, and the reason that that is important is because there is an objection on the front of the quotation that limits acceptance to no additional terms. So because the quotation itself contains that objection, it limits. It does not allow for any other terms to be included within the quotation. That's the problem with the way in which the quotation was drafted. If they had fixed the quotation, which they admitted on two occasions they needed to do, they might have been able to fix that problem, but they need the court to rewrite the entire quotation. But the problem is that quotation was not capable of being accepted. It was the conclusion of the negotiations because there was no shipping term and there was no price or quantity term. There was a price term, but there was no quantity term, which is why the response from GENERAC was required in terms of the acceptance through the sales order confirmation. If you look after The February 1 buyer-to-seller purchase order itself matches the price per unit in the November 27 quotation, doesn't it? It does match the price, but there's still not an agreement as to what the amount is going to be. So, yes, there is an agreement as to price. That's right, but on February 1, then the seller sends back to the buyer a sales order confirmation indicating the quantity and price stated in your February 1 purchase order with no additional terms and conditions. I'm sorry, Your Honor. In the February 1, in the record, there are two that are provided, two quotations, or excuse me, I'm mixing it up, two purchase orders that are provided back to OTE. One is the formalized stationary with the terms and conditions that are on the back of it. So, yes, it is provided to them where there are conflicting terms and conditions on that February 1, 2008 purchase order. But if we go back, and this Court has to look at the intent of the parties here in terms of what was taking place, if you look at Steve Lynn, Steve Lynn was essentially the broker, the agent of OTE in this transaction, and there's an email from him at page 584 of the record dated December 26, 2007. And within that email, he's stating two things. One, we need to prepare a new quotation, and Jim White, who's responding to these items, says, yes, I do. But also, they're discussing what the warranty provision should be. I'm having trouble getting past your argument about the January 21 email was not an offer. You call it a quotation. That doesn't mean it's not an offer legally. Well, Your Honor, I think— Why is that not an offer? It depends. If the Court is suggesting that the— It's not suggesting anything. Why is that not an offer? It's not an offer because those terms and conditions are not glummed into or somehow referenced within that email. In that email, and if you look at the email, the only thing that's being referenced in the email is, please take a look at the pricing that is consistent on Item 2. There is no attempt to reference or incorporate or somehow use those terms and conditions. And that's— Find a copy of the quotation. Please find a copy of the quotation that was originally sent back in November. Item 1, that is highlighted yellow, is the item you should be looking at. The descriptions all are correct, and it is now a 2.5-ounce unit, but the pricing's the same. So now you have the product, and you—the price product, and you have the pricing. And the quantity then comes back. Once the drawings and specs have been released, I'd send you an updated quote for the correct description. Don't change the pricing. So the expectation based on— One other thing. An identical copy of that November 27 quotation with express warranty was attached to that. Yes, Your Honor, it was. And within that statement, it says they're going to provide a new and updated quotation once the new drawing is released. So there is a simple statement, but still nothing that would put GENERAC on notice that those terms and conditions control. If we go back to what occurred on November 27, on November 27, GENERAC rejected the initial offer, and it had no reason to turn and look at those terms and conditions. So they weren't looking at them then. When it looks at them, this email on January 21, it's saying we're going to provide you with a new quotation. Just look at the pricing, which is what it did. Why would it turn and look and view those particular terms and quotations? When OTE received the offer from GENERAC in the form of the purchase order— One thing that changed in terms of price and quantity here other than the—and product identity. The only thing that changed was the product identity, and that was because of the question of the amperage of the charging unit. Is that correct? That's true, Your Honor, but also what changed is—Your Honor hit it on the head. It's the quantity term. It's what's going to be purchased and where it's going to be shipped. So going back to the press cage and J.D. Fields, this Court is saying, look, you've got to be able to assent to that quotation, and there are limited circumstances where a quotation can be an offer. This is not one of them because GENERAC could not then step in and say, I agree. GENERAC stepped in and said, we agree to pricing, we agree to these shipping terms, and we agree to this quantity number, and attached its own terms and conditions. At that point, OTE was in a position to review those terms and conditions and to counter, to dicker, or otherwise negotiate what was contained within the terms and conditions that were presented and attached to that purchase order that was provided by GENERAC. And this back and forth took place with no objection from OTE, mirroring the offer in the form of the purchase order from GENERAC on 29 occasions. And when you look at the intent of the parties, there were two occasions here where OTE acknowledges it needs to prepare a new and accurate quotation, both in the January 21 email itself and also in the Steve Lynn email, where Steve Lynn states, we need to prepare a new quotation. But for GENERAC to have to be subjected to these terms and conditions in the January 21 email or the November 27 email, it's just unfair in the sense that it was never going to notice that these were the terms and conditions that were going to apply to the entirety of this transaction from November 27 forward. And OTE was in a better position to reject those terms and conditions from GENERAC and then suggest that, hey, we should use ours or subject something else or say there was no deal. But it never did so. And the first time terms and conditions, of course, within any lawsuit were referenced was at the time the declaratory judgment action was filed by OTE. Ultimately, the court has to rewrite the quotation to make it effective. It has to rewrite the objection to tie to the right product because the product and the terms and conditions, if you look at the objection on the first page, tie to the offer, and the offer at that point. Well, the price and quantity between merchants, you would expect that, followed by a purchase order, it's greater than the contract. In other words, we call it a price quotation and we call it a purchase order, but it's an offer and an acceptance. No, I made the argument. Between merchants, yeah. Yes, Your Honor, hypothetically speaking, but we are talking about a narrow instance where quotations are allowed. And that quotation is inherently inconsistent on its face because the quotation, when you look at this circuit, when it's evaluating whether a quotation is an offer, it says a cent has to be capable. But when you include that objection term, you are saying no additional terms can be brought into this particular transaction. That quotation is simply not, it doesn't contain enough terms to be susceptible to acceptance from GENERAC. And so there has to be some type of revision of that objection for this to work because ultimately there was no offer from OTE at that point because there was no quantity term and there was no shipping term. So in this sense, it's— That's the only deficiency, that there's no shipping term. That's the only deficiency and that's what makes this quotation not an offer, is that they didn't have a shipping term. It doesn't have a shipping term and it doesn't have a quantity term either, Your Honor. And so there's two things that are missing. The shipping term comes from the purchase order. You quote the price and the offer is not going to give you a quantity. The quantity insofar as an offer can stake quantity is the price per unit. The acceptance is going to be the number because only the buyer knows how many they want. In other words, the price quote was for whatever number you want to order, this is what it is. So I'm not sure what the incomplete— You seem to be arguing that the price quote itself, as you say, had to contain a quantity. And it does contain a quantity, as I see it, insofar as pricing is concerned, which is all an offeror can do. I will sell you 20,000 of these or whatever number you want at $4 and something apiece. Your Honor, the problem is is carving out the quotation.  It is a quotation. And under that Crest case, this Court rejected a quotation that didn't include shipping location, the mode of shipping, or legal terms and conditions. That's very similar to what we have here. We have no shipping terms, and I understand Your Honor disagrees with me, but the point of it by case law is to say, yes, I agree. The number that's held to you, it dictated my offer, all the shipping terms, etc., when those are in the control of the buyer. Your Honor, because that's why quotations generally aren't offers. Because—and that's why this quotation wasn't an offer. It was just a continuance of negotiations. Because all that has to be—under Fifth Circuit law is I have to say, yes, I agree. Moving to my second issue. Why do you not address the Axelson case? My antenna always goes up when one party relies heavily on a particular case and the other party in its responsive brief doesn't even mention it. Your Honor, Axelson gives this Court another approach to this particular provision. In Axelson, what this Court said was, we don't know what the agreement was, so we're essentially going to go with a 2207C argument analysis, which is what terms agree and then we'll supplement with the rest of UCC terms in reaching that agreement. But it does stand for the proposition that an expired quotation can still function as an offer. Yes, Your Honor. It can still function as an offer. But in Axelson, you actually have a complete quotation with the right product, with everything in there. So you can use an expired quotation. But ultimately, this Court didn't rule on when the contract was formed or what the agreement was other than to say either way we reached the same resolution. So this Court could approach this from a 2207C analysis. Obviously, there is an agreement. The parties exchanged products, things were purchased, so on and so forth, and just determine what material terms agreed and then supplement the rest of the agreement with UCC terms. We have a contract. The only question is whether or not the warranty provision control. That's an issue, isn't it? That's right, Your Honor. Because in this instance, we have a warranty provision that limits my client's ability to seek redress for 12 months. And the problem with those terms and conditions, which were inserted in November of 2007 for the wrong product, was we're putting out a battery charger for a generator that goes up on the racks and it's not going to be sold within 12 months. That's just the reality of the situation here. And by applying those terms and conditions, there just simply isn't any meaningful redress for my particular client, but my client was never on notice that it was subject to those terms and conditions in the first place. For the reasons we've set forth in the brief, we would request that the Court reverse the trial court. All right. You've saved time for rebuttal. Thank you, Mr. McNeil. Mr. Gunoff? May it please the Court. The U.S. Supreme Court building on the outside of it says equal justice under law. What GENERAC asked this Court to do is apply preferential justice outside the law of Texas. This is a case about a buyer who has failed to live up to its negotiated contract. And all of GENERAC's arguments are based on pre-UCC hypertechnicality and formality that may have been required decades ago before the UCC. But this is the very type of thing the UCC sought to end, specifically Section 2207, that you don't need formalities. You can't rely on hypertechnicalities. You can't say, but ours had conflicting terms. And you certainly can't say that a quotation is not an offer. This Court in Axelson specifically held that an expired quotation was an offer because the negotiations that ensued revived the offer. And in that case, counsel for GENERAC is exactly right. It was not clear that it was revived expressly by correspondence. Here it is clear because the email says here is the offer. It's exactly the same. Judge Higginbotham, you asked earlier what's different between the November offer and the January offer. What's different is one digit. It's a different ampage. The terms and conditions are exactly the same. The price, the grade, the quantity, and delivery date are all the same and explicitly laid out. The only difference is 2.5 amps versus 2.0 amps. And the reason for that is back in November, OTE made an offer based on an ampage that they already made and on-the-shelf, if you will, product, 2.0 amps. But GENERAC wanted higher ampage. And so OTE ran the numbers, they did the specs, and they came back in January and said we'll do 2.5 amps. We'll even do it on the exact same terms that was previously offered. And less than a week later, a purchase order was sent. The purchase order was the acceptance of that offer. The offer accepted by GENERAC was made on January 21, 2008, and there is no legitimate argument that this offer did not contain all aspects of what an offer needs to have. It's a willingness to enter into a bargain with a specific buyer. It's not a quotation. It's not an ad in a magazine. It's not a billboard. It was directed specifically to GENERAC with a product specifically made for GENERAC, a 2.5-amp charger. It's specific. It contains all terms clearly and definitely. And it not only reasonably invited acceptance, but it was accepted by GENERAC approximately a week after it was made. And while all terms and conditions do not need to be set forth in an offer, for it to be an offer under Section 2207A, here the terms and conditions were set forth. They were attached to the email, and they're specifically referenced in the quotation under Item 2. They're the exact same terms and conditions that were offered in November. And GENERAC ignores the January 21, 2008 email altogether and simply wants the court to go from November and an expired quotation and jump to February 1, 2008. The court can't do that because, one, that ignores the facts. And the court also can't do that because on February 1, 2008, without the January 21, 2008 email and offer, there is no 2.5-amp battery charger to seek to buy. It didn't exist until OTE said, We will make it for you under the exact terms as previously. That is an offer, and it was accepted by the purchase order. OTE has always argued that that's the offer. What's the effect of the warranty terms, though, that GENERAC's purchase order contained? The warranty terms conflict. There's no way around that. In the original offer that was accepted, the January 21, 2008 offer, OTE set out specifically a limited warranty. It had the conspicuous terms expressly that the UCC requires for making a limited warranty and exempting out other warranties. They complied with the UCC on that. And so that was an offer under those terms. And then they went on to say there can be no additional or different terms to accept this offer. You cannot insert your own terms, and we object to any terms that are put into the contract. And so when the purchase order is sent, there were two purchase orders sent on February 1, 2008. One had its own terms and conditions attached. The other did not. It's not clear which one was received first. The district court, for summary judgment purposes, assumed the one with the terms and conditions was attached, which is not improper to do on summary judgment. With those terms and conditions, they expressly conflict not only with the warranty terms in the offer, but they expressly conflict with the objections and the no additional terms language and the integration clause that's in the offer. And so the court does not need to go to a Section 2207B analysis or whether to apply knockout or even an eerie guess. The court can do just as it did in Brook-May's Music, and the court can say the offer was the contract, and the contract said Brook-May's Music had far less clear language about exempting out other terms. It said this offer and anything after it, any purchase orders after it, are governed by these terms and conditions in the offer. It had more general language. And this court did not go through a Section 2207 analysis in Brook-May's Music. The court simply held as a matter of contract that when the original offer has terms set forth and says these are the only terms that are to apply for future purchase orders, that governs, that is the contract. So the court doesn't even need to get into an analysis of which approach or an eerie guess or anything else. But even if the court does. So the purchase order constitutes the acceptance to the offer. Yes. And all of the terms attached to that purchase order having to do with warranties are ineffective. They're ineffective, yes. And so your client was just free to ignore those? Deem that they weren't appropriately a part of the agreement and just ignore them. I mean, is that what occurred? Yes, but not simply because they conflict. Not simply because the first offer was already made. Because the language of the offer in numerous places, the introductory paragraph on the quote, objects to additional or different terms being inserted. The introductory paragraph of the terms and conditions says these and only these conditions can apply. Section 4, the integration clause. The SEC simply avoids here the common law strictness of a counterproposal. That is, if you have some secondary provision of terms in what would otherwise be an acceptance, that common law rule was, as I understand in Article 2, the whole purpose of that was to dispense with that provision. So that you move to do create a contract. And you follow what happened with the code provision? Yes. It eliminated the formality and the hyper-technicality of needing to match up perfectly. When the code provision came in, I remember some of my senior partners were very upset with it. They loved the technicality of the thing. They didn't want the law changed. Yes. Because they got paid by the hour for those technicalities. But what might be bad for transactional lawyers may be very good for litigators. It's funny how that works. Yes, that's exactly right. Now, Section 2207B, if the court were to apply it, reaches the same result. There are different approaches in the country. There's three of them. The question this court would ask at that point would be an eerie guess of what would Texas likely do. Texas has already done it. The Austin Court of Appeals in West Tech Engineering. The international sales case is an unpublished case, which doesn't make it not persuasive. It's simply an Austin Court of Appeals case that's unpublished. West Tech Engineering is an Austin Court of Appeals case that is published. And in that case, it is not accurate to say that West Tech Engineering did not specifically address the issue. Here's what the West Tech court said. We understand West Tech to argue that by incorporating its original bid proposal in the party's agreement, it effectively knocked out. That's what Generac asked for, is knockout approach. Knocked out all additional or different, Section 2207B applied to different or additional terms, contained in Clearwater's purchase agreement. To adopt this argument, we would have to ignore Section 2207B and Wright's letter, which we decline to do. And it goes on to hold in that case that when you have different or additional terms, if they're different, they conflict with each other, then you look at 2207B to determine whether the subsequent proposed terms, whether they're additional or they're different. That's a matter of semantics, is what the courts like Texas and California, who analyze it this way, have said. It's semantics whether it's additional or different. Sometimes it's additional, sometimes it's different, sometimes it's a gray area. It doesn't matter. Look at 2207B, and you ask, is the offer expressly limiting acceptance to the terms of this offer? Undoubtedly, this offer expressly limited acceptance to the terms of the offer in multiple places. Second, do the additional or different terms materially alter the offer? On the warranty terms, they do. It is a limited warranty set forth in the offer, and in the purchase order with terms and conditions attached, it has a much more extensive warranty provision. And third is their notification of objection to them that has already been given or is given within a reasonable time after notice of them is received. The notice of objection is in the very terms of the offer where it says you cannot add additional terms or different terms, and we object if you do. So all three are met. It's an OR standard. If any of them are satisfied, then the additional or different terms fall out. They never come into the contract. But all three are satisfied here. What GENERAC argues is that, first, they argue there's no Texas case addressing this. There is. There's West Tech Engineering. There's International Sales. And this court in tri-state, while it is not the holding of this court, this court did note that under a Section 2207B analysis, you're looking at whether there are additional or different terms, making it clear that it applies as well to different terms. And even if we go beyond what Texas has done, what this court has said in the context of the statute itself, which makes it clear that the heading is additional terms, that's the heading of the statute, that's the umbrella, and underneath it in 2207A are two categories of additional. It's inartfully worded, admittedly, but there's two categories under additional. There's additional or different. And that's what 2207A says. And to believe that the legislature chose to leave different out of that is to believe that the legislature addressed additional or different in 2207A under the umbrella, but then forgot to talk about it in B or C. And while I'm always reluctant to read into what the legislature was thinking or what they intended to do, it is clear here that it applies to additional or different. And the reason we know that is Comment 3 to Section 2207. It says, whether or not additional or different terms will become part of the agreement depends upon the provisions of Subsection 2. And that's referencing Subsection B-2. We know that because the next sentence says, if they are such as materially to alter, that's what B-2 says, the original bargain they will not be included unless expressly agreed to by the other party. Not only were they not expressly agreed to by the other party, but they were expressly objected to by the other party in advance. It's a long way of answering your question that the original offer with the limited warranty put in it, conspicuously noted, governs and rules the day. That was accepted by GENERAC by its purchase order. It is of no effect that the offer does not make a specific offer with the exact number of quantity that will be sold. That ignores the realities of contracting. It has to have quantity tied to price. As Judge Higginbotham referenced, it has to have a price per unit. It has to be clear enough where it's not just a vague price that may or may not apply in certain scenarios. Well, this has clear pricing in it. It says it's this price for this quantity. It's this price for this quantity. It's a discounted pricing the more you buy. To answer the relevant question, not implying my earlier question was relevant, but just so I can understand this product, this is a standby generator, and the battery charger, what's the function of this battery charger? To charge a battery to take over when the power shuts down with a standby? In other words, when the lights go off, you have a battery to run it? You have a gasoline model, but we're talking about the electric model. I believe. Where did this battery amp thing fit into that? The battery charger is to ensure that the generator works when there is no power. What I'm saying is your literature says this is a, quote, a smart battery charger. One so smart? Well, I don't want to say this is not relevant, but whether or not it was defective and to what extent it was defective is not relevant. I'd just like to understand kind of what we're talking about instead of just instructions. Yeah, and particularly since GENERAC has made a stipulation that if our warranty governs that the case has effectively ended, there is simply no basis for the court to entertain the knockout rule in Texas. It has not been applied in Texas. It has been rejected in Texas, and it particularly, I'm not even sure it would apply in a state that does apply the knockout rule with the explicit language in the offer saying we object to additional or different terms. There can be no additional or different terms, and your purchase orders cannot insert additional or different terms. That would seem to me to be an exception to the knockout rule anyway, which is irrelevant because it does not apply in Texas. The offer was made on January 21, 2008. It was accepted by GENERAC approximately a week later, and that became the contract between the parties with the terms and conditions explicitly set forth in OTE's offer. And as a result, the district court properly granted summary judgment in favor of OTE. We ask that this court affirm. Thank you. All right, thank you, Mr. Yanoff. Mr. Ratcliffe, you've saved time for rebuttal. Your Honors, with respect to the knockout rule, in 1985 Judge Higginbotham reviewed a court decision for the Southern District of Texas in the Reynolds v. Westinghouse case. In that particular opinion, Judge Hayden-Hayes applied the knockout rule in a case which was reviewed to suggest that it's never been used in the state of Texas. This isn't the case. What is the case is there's never been a situation where a court has addressed this and said we realize that this is a knockout provision. We are adopting the minority or the majority. That just hasn't happened. I think that's conceded in the briefs. The majority view is to adopt the knockout rule. The reason it is to adopt the knockout rule is to prevent situations like this, predict a situation where the offeror's offer with varied terms and conditions would apply for the entirety of the transaction simply because it was the first one to make an offer. And by applying the knockout rule, we get in there. Any terms that are conflicting are knocked out, and then the UCC supplements where there are warranty provisions that are contained. Judge Graves, in response to your question, under and if you read very closely, and it's hard to see on the first page of the quotation, but on the first page of the quotation, that's what their argument is resting upon, which is this objection provision. But the objection provision is not limited to simply our terms and conditions. It is limited to everything. It states, this offer is expressly limited to the terms and conditions on the face, that's the front of the quotation, and reverse side hereof, and seller hereby objects to any additional or different terms in buyer's forms or other writings. That is the problem with the quotation here. In all the other quotations, in Axelson, in all these other quotations cases, you have all the terms there. But they have already objected to Generac offering any additional terms, which is why that January 21st email was not capable of acceptance. They have said, we're rejecting everything. That's what I just heard argued. So there's no ability for Generac to ever come in and offer any type of additional term. And the reason it can work in other situations. You mean you couldn't, if the buyer then supplied the quantity term, they would make a conflicting proposal? Yes, Your Honor. Because that quotation is not capable of acceptance under that objection. That's the problem here. If the quotation contained everything, then that wouldn't be an issue. Because then we follow within Prestridge, and we say, we agree to everything. That language is meaningless. Because it's pointless to put it in there. Yes, it is pointless to put it in there when your offer doesn't contain all material terms, which is what occurred in this particular case here. The purpose of putting it in there is to deal with conflicting terms and say this is the only way we're going to do business. But the force of your argument is that the effect of that is that there's no problem with any conflicting terms. You don't have any kind of contract that's going to emerge. You can have an emerging contract if you have all material terms, which is what Prestridge suggests. Thank you, Your Honor. Thank you, Mr. Medlick. Your case is under submission. Last case for today.